Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3194 | **DATE** | 12/22/2004 |
| **CASE TITLE** | Central States, vs. Hook Up, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's Motion for Summary Judgment is Granted. Plaintiffs may prepare a draft judgment order in accordance with this memorandum opinion (supported by affidavits as to fees and costs), submit it to opposing counsel for any objections as to form or the amount of fees and costs, and submit a final draft order to the court by January 7, 2005.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 12/22/2004 date mailed notice | |
| KM | courtroom deputy's initials | 2004 DEC 22 PM 1:35 Date/time received in central Clerk's Office | KM mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND; )
CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS HEALTH AND )
WELFARE FUND; and HOWARD )
McDOUGALL, Trustee, )
)
      Plaintiffs, )
)
v.                        )   No. 03 C 3194
)
HOOK UP, INC., a Missouri )
corporation; and HOOKUP.COM, INC., )
a Missouri corporation, )
)
      Defendants. )

DOCKETED
DEC 23 2004

## MEMORANDUM OPINION

This ERISA case is before us on the motion of plaintiffs for summary judgment. For the reasons explained below, the motion is granted.

## BACKGROUND

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"); Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health & Welfare Fund") (together, the "Funds"); and the Funds' Trustee Howard McDougall have filed this three-count action against defendants



Hook Up, Inc. ("Hook Up") and Hookup.Com, Inc. pursuant to the Employee Retirement Income Security Act ("ERISA").[1]

Hook Up was an employer required to contribute to the Funds on behalf of its employees under collective bargaining agreements executed with various Teamsters Local Unions. On August 31, 2002, Hook Up permanently ceased all covered operations under the Pension Fund.

When Hook Up ceased operations, it effectuated a "complete withdrawal" from the Pension Fund within the meaning of ERISA, 29 U.S.C. § 1383. When an employer withdraws from a multiemployer plan, the employer becomes immediately liable for its proportionate share of unfunded vested benefits. See 29 U.S.C. § 1381; Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Rentar Indus., 951 F.2d 152, 153 (7th Cir. 1991).

ERISA provides that upon withdrawal, a multiemployer pension fund shall "determine the amount of the employer's withdrawal liability, notify the employer of the amount of the withdrawal liability, and collect the amount of the withdrawal liability from

---

[1] Plaintiffs name defendant Hookup.Com, Inc. as an entity under the "common control" with Hook Up and thus liable for the withdrawal liability assessment. Defendants admit that as of August 31, 2002, Hook Up owned at least 80% of the total combined voting power of all classes of Hookup.Com stock entitled to vote and/or at least 80% of the total value of shares of all classes of Hookup.Com stock. (Defendants' Response to Plaintiffs' Statement of Material Facts, ¶ 11.) Accordingly, defendants constitute a single employer within the meaning of section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder. See Central States, Southeast & Southwest Areas Pension Fund v. Johnson, 991 F.2d 387, 388-89 (7th Cir. 1993).

the employer." 29 U.S.C. § 1382 (numerals omitted). In October 2002, the Pension Fund calculated Hook Up's withdrawal liability ($2,782,644.50) and sent Hook Up a notice of that liability and a demand for payment. Hook Up admits that it did not make any withdrawal liability payments, nor did it initiate arbitration to contest the withdrawal liability assessment. The Funds also claim that Hook Up failed to make contributions based on reported work history in addition to misreporting some employees' work history.

Plaintiffs subsequently filed the instant action seeking payment of withdrawal liability (Count I); delinquent contributions based on reported work history (Count II) and unpaid contributions based on unreported work history that were revealed by an audit (Count III). Plaintiffs also seek interest, liquidated damages, attorney's fees and costs, and audit costs. Plaintiffs now move for summary judgment.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom

in the light most favorable to the nonmoving party. See <u>Pitasi v. Gartner Group, Inc.</u>, 184 F.3d 709, 714 (7th Cir. 1999).

## A. **Withdrawal Liability (Count I)**

While defendants do not expressly concede that the Pension Fund is entitled to summary judgment on its claim for withdrawal liability, they admit that they have failed to make any withdrawal liability payments and that they have failed to initiate arbitration to challenge the Pension Fund's assessment. Moreover, defendants raise no defense to this claim. Accordingly, summary judgment for the Pension Fund will be granted on Count I of the Third Amended Complaint.

## B. **Delinquent Contributions (Count II)**

In Count II, plaintiffs allege that Hook Up was delinquent in making contributions to the Funds based on reported work history, in violation of the relevant collective bargaining agreements. Hook Up admits that it agreed to be bound by the provisions of the Funds' Trust Agreements, which required Hook Up to "make continuing and prompt payment to the [Funds] as required by applicable collective bargaining agreements." (Defendants' Response to Plaintiffs' Statement of Material Facts, ¶ 21.) During the period of November 2002 through August 2003, Hook Up reported employee work history to the Funds that consisted of individuals on whose behalf contributions were owed while such individuals were receiving workers' compensation pay. According to plaintiffs, Hook

Up owes the Pension Fund $65,136.00 and the Health and Welfare Fund $70,537.30 regarding this reported work history.

Hook Up admits it has not paid the contributions that plaintiffs seek. Hook Up contends, however, that its permanent cessation of operations in August 2002 extinguished any obligations to plaintiffs under any collective bargaining agreements. Hook Up's view is that after September 1, 2002, its obligation to make contributions to the Funds ended because it discontinued all operations covered by the pension plan.

As plaintiffs point out, Hook Up's argument is based on a misapprehension of the relevant statute. Under ERISA, a complete withdrawal from a multiemployer plan occurs when an employer either (1) "permanently ceases to have an obligation to contribute under the plan" or (2) "permanently ceases all covered operations under the plan." 29 U.S.C. § 1383. In this case, Hook Up effectuated a complete withdrawal from the plan through the second scenario--permanently ceasing all covered operations. Thus, even though Hook Up withdrew, it did not necessarily cease to have contribution obligations pursuant to the collective bargaining agreements, which required Hook Up to make contributions on behalf of individuals receiving workers' compensation-type pay.

Hook Up cites just two opinions in support of its argument, Laborers Health & Welfare Trust Fund for Northern California v. Leslie G. Delbon Co., 199 F.3d 1109 (9th Cir. 2000), and Sheet

Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co., 954 F.2d 1506 (9th Cir. 1992). Both cases are distinguishable because the collective bargaining agreements at issue had been terminated (in Laborers Fund, due to defendant's notice of termination, and in Sheet Metal Workers, due to the union's decertification). Here, the collective bargaining agreements were not terminated.

Hook Up also argues that "it is likely that the dispute concerning whether Hook Up is obligated for the health and welfare and pension contributions in question for inactive employees, who continue on worker's compensation, is a question exclusively reserved for resolution by the Collective Bargaining Agreement's grievance procedure." (Defendants' Response at 9.) Hook Up cites Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984), in which the Supreme Court recognized that although funds such as plaintiffs are not normally required to exhaust remedies or procedures set forth in a collective bargaining agreement as a means to resolve disputes concerning delinquent contributions before bringing suit, there are exceptions. According to Hook Up, one exception that applies here is a situation where the collective bargaining agreement evidences an intent that a pension fund is expected to utilize the agreement for resolution of specific disputes.

Hook Up does not fully and accurately describe the exception recognized by the Supreme Court in Schneider, and the case actually supports plaintiffs' position, not that of defendant. In Schneider, the Court ruled that there is no presumption favoring arbitration of disputes between an employer and an employee-benefit trust fund. Rather, the trust fund agreement must be examined to determine whether the parties intended to condition the trustees' enforcement authority on exhaustion of the arbitration procedures contained in the collective bargaining agreements. 466 U.S. at 371-72.

Although the collective bargaining agreement here does create an arbitration procedure in relation to "questions of interpretation concerning the requirement to make contributions on behalf of particular employees," the agreement does not indicate an intent that the trustees of the Funds were required to exhaust arbitration procedures before seeking judicial enforcement of the contract. Additionally, the Funds' Trust Agreements provide the Trustees with the authority to initiate any legal proceedings that they in their discretion deem to be in the best interest of the Funds, a factor that the Court considered in Schneider. As noted supra, Hook Up admits that it was bound by the Trust Agreements.

Accordingly, plaintiffs were not required to exhaust any arbitration proceeding set forth in the collective bargaining agreement before bringing suit to seek the delinquent

contributions. Even if the Trustees were required to do so, Hook Up has waived any right to arbitrate the issue. It has participated in this litigation and has answered the Third Amended Complaint. Hook Up failed to raise the issue until now, thus waiving it. See Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., No. 94 C 774, Minute Order (May 3, 1995) (citing Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) ("Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election--against arbitration. Except in extraordinary circumstances not here presented, they should be bound by their election.")).

Hook Up's final argument regarding the delinquent contributions claim is that Local 773, the union representing Hook Up's Macungie, Pennsylvania employees, filed a grievance claiming inter alia that Hook Up failed to make certain Fund contributions and secured an award relating to the delinquencies "which may be among those demanded by the Plaintiffs in this litigation." (Defendants' Response at 9 (emphasis added).) Hook Up's argument is both speculative and undeveloped; it fails to offer any evidence that the union's claim overlaps with the claims in this action. Furthermore, while Local 773 may have asserted at one time that Hook Up was liable for Fund contributions, Hook Up admits that the

Settlement Agreement executed by Local 773 and Hook Up did not purport to resolve any claims for contributions to the Pension Fund or Health and Welfare Fund.

Plaintiff's motion for summary judgment will be granted as to Count II.

## C. **Audit Findings (Count III)**

In Count III, plaintiffs claim that Hook Up owes additional contributions, determined from an audit, based on unreported work history. Plaintiffs have determined that Hook Up owes an additional $1,959.60 to the Pension Fund and $1,285.60 to the Health and Welfare Fund. Hook Up does not respond to plaintiffs' argument concerning this count, nor does it adequately deny the relevant material facts as set forth by plaintiffs. Hook Up's argument regarding withdrawal, supra, does not apply to this claim because the unreported work at issue occurred between February 1998 and November 2000, before Hook Up's complete withdrawal from the plan. Moreover, we have already rejected defendant's remaining arguments concerning delinquent contributions.

Summary judgment for plaintiffs will be granted as to Count III. Pursuant to the Funds' Trust Agreements, plaintiffs are also entitled to recover the costs of performing the audit because Hook Up failed to pay contributions and interest for the unreported employee work history discovered through the audit.

## D. **Interest, Liquidated Damages, Attorney's Fees, & Costs**

According to 29 U.S.C. § 1132(g)(2), "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan" the unpaid contributions as well as interest on those contributions, liquidated damages provided for under the plan in an amount not in excess of twenty percent of the unpaid contributions, and reasonable attorney's fees and costs of the action. Because of the mandatory nature of the statute, plaintiffs' requests for interest on the delinquent contributions (as determined from both the reported work history and from the audit), liquidated damages, costs, and attorney's fees are granted.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted. Plaintiffs may prepare a draft judgment order in accordance with this memorandum opinion (supported by affidavits as to fees and costs), submit it to opposing counsel for any objections as to form or the amount of fees and costs, and submit a final draft order to the court by January 7, 2005.

DATE:     December 22, 2004

ENTER:    _____
          John F. Grady, United States District Judge